UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RORY J. UHLER, et al.,

        **Plaintiffs**

v.                                       Case No. 1:08-cv-457-HJW

OCWEN FEDERAL BANK, FSB,

        **Defendant**

ORDER

This matter is before the Court upon the defendant's "Motion for Summary Judgment" (doc. no. 45), which plaintiffs oppose.   Defendant ("Ocwen") has filed proposed findings of fact and conclusions of law, which plaintiffs have highlighted as true, false, or irrelevant (doc. no. 61). The Magistrate Judge entered a Report and Recommendation, recommending that summary judgment be granted. Plaintiffs filed objections.  On June 14, 2011, this Court held a hearing at which respective counsel presented oral arguments.  Upon *de novo* review, and having carefully considered the record, including the written objections and oral arguments, the Court will <u>sustain</u> the plaintiffs' objections and <u>deny</u> the defendant's motion for the following reasons:

**I.  Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> **A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no**

> genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In reviewing a motion for summary judgment, a court must determine whether the evidence is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

## II. Issues Presented

Ocwen moves for summary judgment on plaintiffs' breach of contract claim because 1) it does not have a "contractual relationship" with plaintiffs, and 2) even if plaintiffs have a claim against Ocwen for breach of contract, plaintiffs have not fulfilled their own obligations under the mortgage (doc. no. 45 at 1). Ocwen further argues that "there is no evidence that Ocwen breached any contractual obligation to plaintiffs" or that there is a causal connection between any alleged breach and plaintiffs' claimed damages (Id.)

## III. Discussion

**A. Whether the parties have a contractual relationship**

With respect to Ocwen's first argument, the Court agrees with the Magistrate Judge's recommendation that Ocwen is not entitled to summary judgment for "lack of a contractual relationship." Ocwen Loan Servicing, LLC, acknowledges that it is the "successor in interest" to Ocwen Federal Bank (doc. no. 45 at 1) and that it acquired "the servicing rights" for plaintiffs' mortgage in 1998 (Id. at 4, Jones Aff., citing Ex. A-2).[1] The Real Estate Settlement Procedures Act ("RESPA," 12 U.S.C. § 2601 et seq.) provides that "the term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . . as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). As a mortgage from a federal bank, plaintiffs' mortgage was subject to the requirements of RESPA, and Ocwen does not dispute this.

Ocwen's duties consist of those obligations set forth in the mortgage and the positive duties which the law imposes when a contract exists. For example, RESPA provides that the mortgage servicer must provide "a statement clearly itemizing the estimated taxes, insurance premiums, and other charges that are reasonably anticipated to be paid from the escrow account during the first 12 months after the establishment of the account and the anticipated dates of such payments." 12 U.S.C. § 2609(c)(1)(A). The servicer must make payments from the escrow account in a timely manner as such payments become due. 12 U.S.C.A. § 2605(g). The servicer

---

[1] Although defendant has not yet moved to substitute Ocwen Loan Servicing LLC, the Court will refer to defendant as "Ocwen."

"shall notify the borrower not less than annually of any shortage of funds in the escrow account." 12 U.S.C. § 2609(b). The servicer also has the duty to timely respond to the borrower's written requests, to provide the borrower with written explanation or clarification, and to make appropriate corrections. 12 U.S.C. § 2605(e)(1).

Absent the mortgage contract, the parties would have no relationship, and Ocwen's duties under RESPA would not have arisen. See, e.g., Mark v. Keycorp Mortg. Inc., 1996 WL 465400 (N.D.Ill.,1996)(denying mortgage servicer's motion for summary judgment on breach of contract claim); Fournigault v. Independence One Mortg. Corp., 242 F.R.D. 486 (N.D.Ill. 2007)(collecting cases and granting summary judgment to borrowers on contract claims where mortgage servicer collected monthly escrow payments in excess of amount allowed by mortgages); Webb v. Chase Manhattan Mortg. Corp., 2007 WL 709335 at *7 (S.D.Ohio 2007)(finding that borrower could proceed on claim for breach of contract against loan servicer); Cairns v. Ohio Sav. Bank, 109 Ohio App.3d 644, 672 N.E.2d 1058 (Ohio App. 8 Dist. 1996) (holding that complaint in lawsuit over escrow account balances stated a breach of contract claim). Here, Ocwen is not entitled to summary judgment on the basis of an alleged lack of a "contractual relationship" with plaintiffs.

**B. Whether Ocwen is entitled to summary judgment on the breach of contract claim**

With respect to Ocwen's remaining arguments, the Court will decline the recommendation that Ocwen is entitled to summary judgment on the evidence presently before the Court. While many facts regarding the tortured history of this

**"fixed" mortgage are not disputed by the parties and have been ably set forth by the Magistrate Judge, the Court is convinced that genuine disputes of material fact remain here. The parties dispute whether Ocwen breached certain responsibilities in servicing plaintiffs' mortgage, including Ocwen's duties to accurately calculate and apply the mortgage payments, to timely notify plaintiffs of any changes in payment amounts and due dates, to timely notify of any escrow deficiencies, and to timely provide explanations to plaintiffs upon their written request, as required by the contract and under federal law (doc. no. 61, ¶¶ 6-19). Ocwen concedes that it failed to pay the plaintiffs' property taxes in 1999.**

**The evidence of record reflects that Ocwen has at various times demanded wildly fluctuating mortgage payments;[2] failed to pay plaintiffs' 1999 property taxes; inaccurately stated the annual sum allegedly due for property taxes; issued a refund to plaintiffs for "surplus" escrow funds in September of 1999 and then demanded increased payment for alleged "deficiencies" in January 2001; substantially miscalculated arrearages;[3] failed to post the plaintiffs' timely mortgage payments despite depositing the plaintiffs' checks;[4] allegedly failed to timely notify plaintiffs**

---

[2] **The record reflects that Ocwen has consecutively demanded payments of $1,342.15 (in 2000), $2,038.22 (in March 2001), $1,590.19 (in July 2001), and $1,677 (in 2008) (doc. no. 46 at 103).**

[3]**For example, plaintiffs point out in their Objections that Ocwen had notified them on July 11, 2006 that the alleged escrow deficiency was $22,727.99 but then informed them on April 14, 2008 that it had decreased to $10,677.70 – with no explanation (doc. no. 54 at 4).**

[4]**Plaintiffs alerted Ocwen in writing and furnished a copy of the cancelled check for their January 2001 payment (doc. no. 48, Ex. 3). Ocwen eventually**

in January 2001 of a substantial increase in the mortgage payment, sent inapplicable and/or misdated letters to the plaintiffs;[5] and assessed over $6,000 in late charges based on Ocwen's calculation of disputed arrearages.[6] Plaintiffs assert that Ocwen sent notices at times postmarked after the due date of the demands made by Ocwen in the letters.

Quite frankly, the acknowledged errors, inconsistencies, and failures by Ocwen in servicing this mortgage are too numerous to fully discuss here. Suffice to say, Ocwen has caused great confusion to plaintiffs, who have repeatedly sought explanation for Ocwen's actions while continuing to pay the monthly mortgage amount initially indicated by Ocwen. Plaintiffs, in their own words, have had "to file a lawsuit [for breach of contract] to get it resolved" (doc. no. 46, Uhler Dep. at 68). To say the plaintiffs have lost confidence in their mortgage servicer would be a tremendous understatement.

---

credited their payment, but informed plaintiffs in March 2001 that the monthly payment had increased as of January 1, 2001 to $2,038.22, apparently due to Ocwen's failure to pay the 1999 property taxes. Plaintiffs disputed the increase in writing and indicated they had not received timely notice of the increase prior to the date due (doc. no. 46, Ex. J). In April 2001, Ocwen sent plaintiffs an "escrow analysis" from October 31, 2000 indicating that plaintiffs' annual taxes were $4,521.50 instead of $1,574.31.

[5]Plaintiffs point out that Ocwen sent letters about research requests plaintiffs had never made, mistakenly referred to bankruptcy when plaintiffs were not in bankruptcy, and sent misdated letters. Ocwen characterizes its reference to bankruptcy as a "computer" error (doc. no. 61 at 9, ¶ 10).

[6]Plaintiff testified at deposition that Ocwen changed the payment due date without notice and then demanded late charges, but later reinstated the original due date (doc. no. 46 at 67-68).

**In any event, based on the objective evidence, the record reflects genuine disputes as to whether Ocwen met its servicing obligations, including the various notification requirements. See, e.g., In re Johnson, 384 B.R. 763 (Bkrtcy. E.D.Mich. 2008) (finding that because lender failed to give debtor timely notice of escrow deficiency as required by RESPA and the terms of the mortgage contract, lender thus waived any right to recover arrearage arising from its advances to pay for those taxes); Chase Manhattan Mortgage Corp. v. Padgett, 268 B.R. 309 (S.D.Fla. 2001) (holding that lender waived its right to recover advances for escrow deficiency because it failed to notify borrowers of deficiency); In re Craig-Likely, 2007 WL 5185289 at \*4 (E.D.Mich. 2007) (citing Padgett, observing that "[t]his Court finds its sister court's reasoning sound," and concluding that Wells Fargo waived its right to recover the advances because it had violated RESPA's notice requirements).[7]**

**As to Ocwen's contention that plaintiffs have not fulfilled their own obligations under the mortgage contract, the evidence of record reflects that the plaintiffs have continued to pay the monthly amount of $1,342.15 by certified mail for over a decade, and that Ocwen has applied these payments to the declining mortgage principal and interest. Ocwen's citation to cases where the parties ceased making mortgage payments altogether is not on point with the facts here (doc. no. 45 at 11). Although Ocwen characterizes plaintiff's payment history as a "failure to perform," Ocwen bases this on the plaintiffs' dispute of Ocwen's shifting demands regarding the escrow funds. Essentially, Ocwen contends plaintiffs did not pay the varying**

---

[7]**These findings were based on legal waiver, not bankruptcy discharge.**

amounts demanded by Ocwen, even when at least some of those varying amounts resulted from Ocwen's own mistakes.

At the hearing, plaintiffs' counsel pointed out that plaintiffs' property taxes had only gone up annually by approximately $200-300 (in 1999-2000) and plaintiffs' annual insurance premium had actually *decreased* by $27, but Ocwen had demanded a monthly increase of $696 in 2001, followed by an adjusted demand for a monthly increase of $347. This occurred after Ocwen had issued plaintiffs a refund for "surplus" and was apparently the result of Ocwen failing to pay the 1999 taxes. Although Ocwen indicates it was trying to make up the deficiency by "double-charging" plaintiffs in 2001, one stated purposes in enacting RESPA was to protect consumers from certain abusive practices and to reduce "the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance." 12 U.S.C.A. § 2601(b)(3). As a consumer protection statute, RESPA must be construed liberally to fulfill Congressional intent. Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998).

Plaintiffs contend that Ocwen has not provided them with accurate explanations for its various demands (including the varying arrearages) or has not responded at all. Plaintiffs point out that Ocwen has repeatedly gotten its facts and figures wrong. Ocwen brushes its admitted errors aside and contends that it "got it right" when it notified plaintiffs to pay $1,590.19 for a monthly payment. Even assuming that this number would remedy the deficiency caused by Ocwen's own failure to pay taxes in 1999, plaintiffs thereafter received a series of letters and

notices of default on behalf of Ocwen reflecting widely varying amounts purportedly due (doc. no. 49, Exs. 4-9). The accuracy of these amounts is highly suspect, given their substantial and unexplained differences.

Plaintiffs point to multiple letters they sent regarding Ocwen's various mistakes and shifting numbers. For example, plaintiffs received a letter from Ocwen's counsel in Colorado which directed plaintiffs to send any response to that address. Plaintiffs point out that they did so (doc. no. 49, Ex. 2), but never received a reply. Although Ocwen characterizes this as a "collection" letter, the record reflects that plaintiffs complied with the instructions to dispute the amount as directed and received no reply.

Additionally, genuine disputes of material fact remain as to the existence and extent of any resulting damages. Although plaintiffs have been forthright in acknowledging that Ocwen has corrected some errors, this does not mean that Ocwen did not breach its contractual responsibilities or cause harm to the plaintiffs. Plaintiffs point out that they have been unable to refinance their mortgage (which was initially obtained at 10.3% interest) or obtain other credit due to the ongoing mortgage problems with Ocwen. Considering the record as a whole, the Court is not persuaded that the evidence is so "one-sided" that Ocwen must prevail as a matter of law on the claim for breach of contract. Anderson, 477 U.S. at 251-52. Given the genuine disputes of material fact raised by the parties as to whether their respective obligation were met, summary judgment is not appropriate.

Accordingly, the defendant's motion for summary judgment (doc. no. 45) is

**DENIED.**

**This case shall proceed to trial as scheduled.**

**IT IS SO ORDERED.**

**s/Herman J. Weber**
**Herman J. Weber, Senior Judge**
**United States District Court**
